UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
UNITED STATES OF AMERICA,

                Plaintiff,                                              **REPORT AND**
                                                                    **RECOMMENDATION**
                                                                    17-CV-03294 (JS) (JMW)

        -against-

CARE WORLDWIDE, INC. and
RAINA MASSEY,

                Defendants.
-----------------------------------------------------------X

**A P P E A R A N C E S:**

Edward K Newman, Esq.
Jolie Apicella, Esq.
Megan Jeanette Freismuth, Esq.
United States Attorneys' Office
Eastern District Of New York
271 Cadman Plaza East
Brooklyn, NY 11201-1820
*For Plaintiff United States of America*

Satish K. Bhatia, Esq.
Bhatia & Associates PLLC
38 West 32nd Street, Suite 1511
New York, NY 10001
*For Defendants Care Worldwide, Inc.
And Raina Massey*

**WICKS,** Magistrate Judge:

       Plaintiff United States of America commenced this enforcement action on June 2, 2017, against Defendants Care Worldwide, Inc. ("Care Worldwide") and Raina Massey ("Massey") to enforce a civil penalty and an award of back wages and costs due to the United States Department of Labor ("DOL") Wage and Hour Division ("WHD") on behalf of three employees formerly employed by Defendants under the H1-B visa program. Before the Court on referral

1

from the Honorable Joanna Seybert is Plaintiff's motion for summary judgment (DE 44-45) which Defendants oppose. (DE 47.) For the reasons that follow, the undersigned respectfully recommends that the Government's motion for summary judgment be GRANTED.

## I. FACTUAL BACKGROUND

The following facts are drawn from Plaintiff's Local Rule 56.1 Statement of Material Facts. Because Defendants did not submit a Rule 56.1 counter statement, those facts set out in Plaintiff's statement are now considered undisputed for purposes of this Report and Recommendation. *See Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003) ("If the opposing party then fails to controvert a fact so set forth in the moving party's Rule 56.1 statement, that fact will be deemed admitted"). However, notwithstanding Defendants' failure to submit a Rule 56.1 counter statement a district court "may not rely solely on the statement of undisputed facts contained in the moving party's Rule 56.1 statement" but "must be satisfied that the citation to evidence in the record supports the assertion." *Vermont Teddy Bear Co. v. 1-800 Beargram Co.*, 373 F.3d 241, 244 (2d Cir. 2004). Accordingly, it is against this backdrop, that the undersigned considered the motion.

**The WHD Investigation**

The WHD conducted an investigation of Massey and Care Worldwide beginning in 2013 for compliance with the H-1B provisions of the Immigration and Nationality Act ("INA"). (DE 44-1 at ¶ 1.) An investigation by the WHD involves examination of records, including payroll and time records, interviews with employees, observation of working conditions at the employer's place of business, and meetings with the employer. (*Id.* at ¶ 2.) WHD's investigation of Defendants found that they willfully failed to pay wages to the three H-1B

employees for productive work and for benching periods.[1]  (*Id.* at ¶ 3.)  Defendants also took illegal deductions from the salary of one of those employees.  (*Id.* at ¶ 4.)  On May 7, 2014, the WHD issued a determination letter setting forth the violations and remedies imposed for each violation. (*Id.* at ¶ 5.)  As a result of the violations, back wages in the amount of $324,178.24 were assessed for former employees bearing the initials MA, RR, and CS broken down as follows:

- Unpaid wages for MA to be $41,217.88 for 9/15/12-3/16/13 (*id.* at ¶ 6);
- Unpaid wages for RR to be $131,658.02 for 5/8/10-12/15/12 (*id.* at ¶ 7); and
- Unpaid wages for CS to be $144,309.33 for 10/03/09-09/22/12 (*id.* at ¶ 8).

The WHD also required Defendants to pay MA $15,000 in reimbursement for visa and training fees incurred. (*Id.* at ¶ 9.)  A penalty of $6,750.00 was also imposed.  (*Id.*)

**Defendants Appeal the WHD Determination**

On May 22, 2014, Defendants filed an appeal and request for hearing on the Administrator's determination.  (*Id.* at ¶ 10.)  On Defendants' motion, on December 7, 2014, the Administrative Law Judge assigned to the matter (the "ALJ") deferred proceedings until May 2015.  (*Id.* at ¶ 11.)  In the December 7, 2014 order, the ALJ specifically notified Defendants and counsel that when the adjournment ended, they "will be directed to show cause why processing of this matter should not resume." (*Id.* at ¶ 12.)  The ALJ further noted that failure by the Defendants "to be prepared to go forward once the deferment period ends without good cause

---

[1] A "benching period" is a period of "nonproductive" work "due to a decision by the employer (based on factors such as lack of work) . . ." *See* U.S.C.A. § 1182(n)(2)(C)(vii)(I); *see also* DE 44-3 at 5 ("The violation includes failure to pay the required wage rate for productive and non-productive work and by taking illegal deductions.")

3

shown may be deemed a withdrawal of Respondents' objection to the Administrator's determination..." (*Id.* at ¶ 13.)

The December 7, 2014 order was served on Defendants by U.S. Mail, at their home and office addresses of record, as well as to their counsel at his address of record. (*Id.* at ¶ 14.) On May 6, 2015, the ALJ issued an order for the Defendants to provide written notice of their intention to continue to proceed with the matter by May 26, 2015. (*Id.* at ¶ 14.) The ALJ further warned Defendants that failure to provide such written notice could be deemed as a withdrawal of their objections to the Administrator's May 7, 2014 determination. (*Id.* at ¶ 16.) The May 6, 2015 order was served on Defendants and their counsel at all addresses of record. (*Id.* at ¶ 17.)

**The ALJ Affirms the WHD Determination**

The Defendants failed to file a response or appear in response to the May 6, 2015 Order. (*Id.* at ¶ 18.) Noting this failure, and citing to her prior notifications and warnings, on June 10, 2015, the ALJ issued a decision and order finding that Defendants' failure to respond constituted a waiver of their objections to WHD's determination and affirmed it. (*Id.* at ¶ 19.) This was done pursuant to 29 C.F.R. §18.39 (now found at 29 C.F.R. §18.21 (c)), which permits dismissal of a request for hearing upon its abandonment. (*Id.*) The June 10, 2015 decision contained a notice that advised Defendants they were able to appeal the decision through a petition for review within 30 days. (*Id.* at ¶ 20.) The June 10, 2015 decision was served on defense counsel. (*Id.* at ¶ 21.) Defendants failed to file an appeal. Accordingly, the ALJ's decision and order became final on July 10, 2015 ("Final Administrative Order"). (*Id.* at ¶ 22.)

On September 1, 2015, DOL sent a demand letter to Defendants (and current counsel Satish K. Bhatia via E-Mail) demanding payment of the debt, and warning that DOL would seek appropriate enforcement remedies if Defendants failed to pay by September 14, 2015. (*Id.* at ¶

4

23.) Defendants did not make any payments. (*Id.*) On November 24, 2015, the WHD issued a Certificate of Indebtedness against Defendants. (*Id.* at ¶ 24.) It certified that Defendants were indebted to the United States in the amount of $384,639.46 ($6,750 in civil money penalties; $324,178.24 in back wages; and prejudgment interest of $53,711.22). (*Id.*) To date, Defendants have made no payment on the penalties and back wages, or costs owed to the DOL. (*Id.* at ¶ 25.)

## II. THE LEGAL STANDARD

Summary judgment under Rule 56 is appropriate only where the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012) (citing Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit under the governing law, and a dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Baldwin v. EMI Feist Catalog, Inc.*, 805 F.3d 18, 25 (2d Cir. 2015) (quotes omitted). "In determining whether there are genuine issues of material fact, we are required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *Johnson*, 680 F.3d at 236 (quotes omitted). The movant bears the burden to initially demonstrate that there are no material facts to preclude summary judgment. *Carroll v. Krumpter*, 397 F. Supp. 3d 234, 243 (E.D.N.Y. 2019). If the moving party meets its initial burden, the burden then shifts to the nonmoving party to show that there are specific facts that demonstrate a genuine issue of fact exists. *Id.* (citation omitted).

"To defeat a summary judgment motion properly supported by affidavits, depositions, or other documentation, the non-movant must offer similar materials setting forth specific facts demonstrating that there is a genuine dispute of material fact to be tried." *7951 Albion, LLC v. Clear Blue Specialty Ins. Co.*, 548 F. Supp. 3d 321, 324 (E.D.N.Y. 2021). The non-movant must

5

present more than a "scintilla of evidence," or "some metaphysical doubt as to the material facts" and "may not rely on conclusory allegations or unsubstantiated speculation." *Fabrikant v. French*, 691 F.3d 193, 205 (2d Cir. 2012); *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011).

### III. ANALYSIS OF THE CLAIMS

#### A. The United States is Entitled to Enforce the DOL Administrative Order

Plaintiff asserts that when a federal agency, such as the DOL, issues an administrative order, the DOL itself or the United States may seek a judgement from the court to enforce that order. (*See* DE 45 at 5-6.) In opposition, Defendants argue the United States Attorney lacks "locus standi" (standing) to bring this enforcement action under 28 U.S.C. § 516 and that this type of action can only be brought under the direction of the Attorney General. (*See* DE 47 at 4-5.)

The United States is entitled to enforce the Final Administrative Order. While case law demonstrating the United States' authority specifically under the INA's H-1B laws to enforce administrative orders is sparce, it is undeniable that the United States Department of Justice may bring suit on behalf of the United States and its agencies when the United States has a justiciable interest to protect or defend. *See e.g.*, *United States v. Occidental Chem. Corp.*, 200 F.3d 143, 149 n.6 (3d Cir. 1999) ("Finally, we feel confident that Congress did not intend to authorize administrative orders against a person . . . and, at the same time, deny the [agency] the authority to enforce those orders in court"); *United States v. Town of Bolton Landing*, 946 F. Supp. 162, 171 (N.D.N.Y. 1996) (granting partial summary judgment to the United States in an action to enforce a Wage Appeals Board decision upholding a finding that the defendants failed to pay

6

prevailing wages, as mandated by the labor standards provisions of the Davis–Bacon Act). To conclude otherwise would defy logic by vesting an agency to obtain an unenforceable order.

Most compelling here, however, is that the WHD determination made final on July 10, 2015, ordered the civil penalty and back wages due and owing to the United States. Specifically, the WHD determined that Defendants willful failure to pay wages as required, failure to provide notice of the LCA, and failure to maintain documents resulted in a civil money penalty in the amount of $6,750.00 and back wages in the amount of $324,178.24. (DE 44-3 at 1-2). The Administrator determined that payment of the civil money penalty must be paid to the "'Wage and Hour Division, U.S. Department of Labor,' U.S. Department of Labor – Northeast Region, the Curtis Center, Suite 850 West, 179 S. Independence Mall West, Philadelphia, PA 19106-3317." The Administrator further determined that Defendants must pay the back wages to the "'Wage and Hour Division - Labor,'. . . Wage and Hour Division, U.S. Department of Labor, 200 Sheffield Street, Suite 102, Mountainside, New Jersey 07092." (*Id.* at 2.)

Further, the United States Attorney for the Eastern District and the Assistant United States Attorney have the authority to bring this action. Defendants posit, by reciting their fifth affirmative defense, that 28 U.S.C. § 516 requires that litigation in which the United States is a party must be brought under the direction of the Attorney General, and therefore the United States Attorney and its Assistant United States Attorneys litigating this action do not have "standing" to do so. (DE 47 at ¶ 9.) This argument is specious. As a preliminary matter, standing is a concept that pertains to a claimant who brings an action, not the attorneys that litigate it. Indeed, "[s]tanding focuses on whether *the party* invoking jurisdiction had the requisite stake in the outcome when the suit was filed." *Nat. Res. Def. Council, Inc. v. Wheeler*, 367 F. Supp. 3d 219, 227 (S.D.N.Y. 2019) (emphasis added). Therefore, the Court reads

7

Defendants' argument as one that states that the United States Attorney does not have the authority to bring the action on behalf of the United States. Still, Defendants' argument fails.

The statutory grant is clear: 28 U.S.C. § 516 provides that "[e]xcept as otherwise authorized by law, the conduct of litigation in which the United States, an agency, or officer thereof is a party, or is interested, and securing evidence therefor, is reserved to officers of the Department of Justice, under the direction of the Attorney General." Under this statute the Department of Justice is charged with representing federal agencies in court. *See* 28 U.S.C. § 516. Indeed, United States Attorneys serve as the nation's litigators under the direction of the Attorney General. *See The Role of the United States Attorney*, THE UNITED STATES ATTORNEY'S OFFICE, https://www.justice.gov/usao-wdtx/role-united-states-attorney (Feb. 16, 2022); Organizational Chart, The United States Department of Justice, https://www.justice.gov/agencies/chart, (Oct. 28, 2021). United States Attorneys and Assistant United States Attorneys often represent the government in actions concerning the INA. *See e.g. Bugayong v. I.N.S.*, 442 F.3d 67 (2d Cir. 2006) (Assistant United States Attorneys and United States Attorney's Office for the Southern District of New York for the Government); *Saloum v. U.S. Citizenship & Immigr. Servs.*, 437 F.3d 238 (2d Cir. 2006) (Assistant United States Attorney and the United States Attorney's Office for the Western District of Michigan for the Government); *Duncan v. I.N.S.*, No. 02 CIV. 300 (MBM), 2003 WL 255325 (S.D.N.Y. Feb. 5, 2003) (Assistant United States Attorney and United States Attorney for the Southern District of New York for the Government).

Therefore, it is respectfully recommended that the Court find that the United States is entitled to enforce the Final Administrative Order and that the United States Attorneys who bring the action have the authority to do so.

B. **This Court has Personal Jurisdiction over Defendants**

Defendants next argue that this Court lacks personal jurisdiction over them because Plaintiff failed to serve them with the Summons and Complaint. (DE 47 ¶ 10.) Plaintiff on the other hand, claims service was properly effectuated upon Defendants. (DE 45 at 3.)

Service of process is governed by Rule 4. *See* Fed. R. Civ. P. 4. Rule 4(e) provides that an individual may be served, *inter alia*, by delivering a copy of the summons and of the complaint to the individual personally or leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. *See* Fed. R. Civ. P. 4(e)(2)(A-B). Rule 4(h)(1) states that service of process on a corporation must occur by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made" (Fed. R. Civ. P. 4(e)(1), 4(h)(1)(A) ), or "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." *Id.* at 4(h)(1)(B).

New York Civil Practice Laws and Rules ("CPLR") § 311 governs service upon a corporation and similar to Rule 4(h)(1)(B) provides that "[p]ersonal service upon a corporation . . . shall be made by delivering the summons . . . to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service." *See* CPLR § 311 (a)(1). "Since CPLR § 311 was based on the same language as Rule 4(h)(1)(B), courts have construed the federal and state provisions in *pari materia*." *Wilson v. WalMart Store, Inc.*, No. CV 15-4283 (JS)(GRB), 2016 WL 11481723, at *2 (E.D.N.Y. Aug. 22, 2016), *report and recommendation adopted sub nom. Wilson v. Walmart*

9

*Store, Inc.*, No. 15-CV-4283(JS)(GRB), 2016 WL 5338543 (E.D.N.Y. Sept. 23, 2016).  A plaintiff has 90 days to serve their complaint.  Fed. R. Civ. P. 4(m).

      Here, as Plaintiff points out in its reply brief, Defendants were served with copies of the Summons and Complaint through personal service on Massey individually and as acknowledged authorized agent for Care Worldwide.  (*See* DE 48 at 3; *see* DE 20-21.)  Specifically, Massey was served with the Summons and Complaint via personal service on June 23, 2017, and on July 6, 2017, Massey was personally served again, but this time as an authorized agent for Care Worldwide.  (DE 20-21.)  Such service is evidenced by affidavits of service filed with the Court. (*Id.*)[2]  What is more, it is likely that Defendants forfeited their personal jurisdiction defense by participating in five years of litigation without ever moving to dismiss for lack of personal jurisdiction.  *See Hamilton v. Atlas Turner, Inc.*, 197 F.3d 58, 62 (2d Cir. 1999) (holding that a defendant forfeited its lack of personal jurisdiction defense when the defendant's answer asserted the court's lack of personal jurisdiction, but the defendant did not move to dismiss on those grounds until four years later); *Datskow v. Teledyne, Inc., Cont'l Prod. Div.*, 899 F.2d 1298, 1303 (2d Cir. 1990) ("A delay in challenging personal jurisdiction by motion to dismiss has resulted in waiver, even where, as here, the defense was asserted in a timely answer").

---

[2] The affidavits of service were not filed with the Court until May 23, 2018.  (*Id.*)  At that time, the Plaintiff wrote to the Court to explain that the delay in posting the affidavits of service was an administrative error.  (DE 22.)  Defendants did not submit any opposition or claim any prejudice from the delay.  Nonetheless, a delay in filing proof of service does not invalidate otherwise effective service.  *Winfield v. C & C Trucking*, No. 02 CIV.7688 SAS, 2003 WL 21749610, at *3 (S.D.N.Y. July 29, 2003) ("However, a delay in filing the proof of service is not a jurisdictional defect so long as the service itself followed the requirements of the statute"); *King v. Galluzzo Equip. & Excavating, Inc.*, No. 00 CV 6247 (ILG), 2001 WL 1402996, at *5 n.12 (E.D.N.Y. Nov. 8, 2001)( "[A] delay in filing proof of service is correctable, and will not invalidate otherwise effective service").

For these reasons it is respectfully recommended that the Court find that it has personal jurisdiction over Defendants.

### C. This Enforcement Action is Not Barred Under the Doctrines of Res Judicata or Collateral Estoppel.

Defendants argue that the present proceedings are barred by the doctrines of res judicata and collateral estoppel because of a settlement that was reached in connection with two actions in the Southern District of New York titled *Isidra B. Tuburan, Rosalina D. Quilario, and Wendolen O. Almonte v. Raina Massey, Jerry Sona, and Care Worldwide, Inc.*, 12-cv-8561 (NRB) ("2012 Action") and *Emmelyn Calumba, Arlene Ferrera, Eva Martina Machacon, and Cleanda Oncines v. Raina Massey and Care Worldwide, Inc.*, 13-cv-8936 (NRB) ("2013 Action"). (DE 47 at ¶¶ 2-8.) Plaintiff asserts this argument is without merit because the two actions cited by Defendants "involve completely **different victims/plaintiffs** than the three employees/victims whose labor contract agreements were violated here." (DE 48 at 1) (emphasis in original.) Plaintiff further asserts that even if the victims in this matter had reached a private settlement, the Plaintiff here—the United States Government—would still be able to enforce H-1B regulations and LCA agreements. (*Id.* at 2.)

"Res judicata and collateral estoppel are related but distinct doctrines that may bar a party from litigating certain claims or issues in a subsequent proceeding." *Flaherty v. Lang*, 199 F.3d 607, 612 (2d Cir. 1999). "Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating claims that were or could have been raised in that action." *Marvel Characters, Inc. v. Simon*, 310 F.3d 280, 286–87 (2d Cir. 2002). The doctrine only applies if "(1) the previous action involved an adjudication on the merits; (2) the previous action involved the plaintiffs or those in privity with them; (3) the claims asserted in the subsequent action were, or could have been, raised in the

11

prior action." *Monahan v. New York City Dep't of Corr.*, 214 F.3d 275, 285 (2d Cir. 2000). Because claim preclusion only applies to issues actually litigated and which resulted in an adjudication on the merits, a settlement agreement that results in dismissal *without prejudice* cannot be considered a final judgement on the merits. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990) ("'[D]ismissal ... without prejudice' is a dismissal that does not 'operat[e] as an adjudication upon the merits,' . . . and thus does not have a res judicata effect"); *Rora LLC v. 404 E. 79th St. Lender LLC*, 630 B.R. 876, 886 (E.D.N.Y. 2021) ("In addition, the Settlement Stipulation was entered *without* prejudice to foreclosure, which further demonstrates that it was not an adjudication on the merits"). [3]

"Collateral estoppel, or issue preclusion, prevents parties or their privies from relitigating in a subsequent action an issue of fact or law that was fully and fairly litigated in a prior proceeding." *Marvel Characters, Inc.*, 310 F.3d at 288. This doctrine only applies when "(1) the identical issue was raised in a previous proceeding; (2) the issue was actually litigated and decided in the previous proceeding; (3) the party had a full and fair opportunity to litigate the issue; and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits." *Id.* at 288-89. Where a dismissal is unaccompanied by findings of fact or law, it does "not bind the parties on any issue . . . which might arise in connection with another cause of action." *Id* at 289; *Schenk v. Mine Mgmt. Co.*, No. 89-CV-97, 1997 WL 31400, at *7 (N.D.N.Y. Jan. 23, 1997) ("Thus, because the voluntary order of dismissal in *Schenk I*, by its very nature, was not accompanied by findings of fact or conclusions of law, it cannot have preclusive effect, under the doctrine of collateral estoppel, on this successive action"). For both issue and claim

---

[3] However, a stipulated dismissal *with prejudice* operates as a final judgment on the merits for purposes of *res judicata*. *Marvel Characters, Inc.*, 310 F.3d at 287.

12

preclusion, literal privity between the parties is not required, but a party will be bound by the previous judgment if his interests were adequately represented by another vested with the authority of representation. *Monahan*, 214 F.3d at 285.

Here, the fact that the dismissal of the 2012 Action and 2013 Action was without prejudice and was unaccompanied by findings of fact or law, is fatal to Defendants' assertion of the claim and issue-preclusion doctrines. Further, the parties to the settlement agreements, namely Isidra B. Tuburan, Rosalina D. Quilario, and Wendolen O. Almonte, are not the employees referenced in the Final Administrative Order which Plaintiff seeks to enforce here. The three employees for which the Defendants owe the civil penalty of $6,750.00 and back wages in the amount of $324,178.24 in this case bear the initials "MA" (Masuma Akter), "RR" (Rosa Ramirez), and "CS" (Celevic Sawit). (DE 48 at 1; DE 49.) Finally, it is plain that the Plaintiffs in the 2012 and 2013 Actions are not the same Plaintiff here—the United States Government. Additionally, it cannot be said that the United States' interests were adequately represented by the individual plaintiffs in the 2012 and 2013 Actions or that those individual plaintiffs had the authority to represent the United States. Therefore, privity—literal or otherwise— between the parties does not exist.

Therefore, it is respectfully recommended that the Court find that this enforcement action is not barred by claim or issue preclusion.

### D. Neither Party in this Enforcement Action Seeks Review of the Final Administrative Order and Therefore the Court Should Refrain From Doing So

Each of the parties' remaining arguments, require this Court to review the merits of the Final Administrative Order. However, neither party has sought review of the Final Administrative Order under § 702 of the Administrative Procedure Act ("APA").

For the first time in its moving papers, Plaintiff argues that the administrative order dismissing defendants' objections and affirming the WHD determination was "proper." (DE 45 at 7.) In turn, Defendants argue, albeit in a circuitous fashion, that Massey produced sufficient medical records to show cause as to why she was unable to participate and failed to appear in the administrative proceedings. (DE 47 at ¶¶ 12-13.) Defendants also argue that the administrative proceedings were barred by the statute of limitations. (*Id.* at ¶ 11.) Plaintiffs respond by arguing that Defendants failed to show good cause as to why the administrative proceedings should not have went forward and that there is no statute of limitations for DOL to bring an administrative proceeding for LCA violations. (DE 48 at 3-4.) Each of these arguments require the Court to look into the merits of the administrative proceeding which concluded in the Final Administrative Order on July 10, 2015.

Here, neither party here has sought review of the administrative determination under the APA. Indeed, Plaintiff commenced this action asserting one claim to *enforce* the Final Administrative Order. (DE 1.) Defendants have neither asserted counterclaim nor cross-moved seeking review of the agency determination. (*See* DE 18, DE 47.)

In one instance, cited by neither party, a District Court in the Northern District of New York took an admittedly "unconventional approach" and nevertheless conducted a review of a final agency determination in a posture other than in an action commenced by an aggrieved party in federal court. *See United States v. Town of Bolton Landing, N.Y.*, 946 F. Supp. 162, 169 (N.D.N.Y. 1996). Defendant in *Town of Bolton Landing* sought a finding that the administrative decisions at issue were "arbitrary and capricious," the standard set out by the APA. *Id.*; *see* 5

14

U.S.C. § 706(2)(A). [4]  Further, the authority which the *Town of Bolton Landing* court relied on to make such a procedural jump was a Ninth Circuit case where although the plaintiff commenced the action based on an ejectment claim, the defendant sought review of final agency action by counterclaim. *See Coleman v. United States*, 363 F.2d 190 (9th Cir. 1966), *adhered to on reh'g*, 379 F.2d 555 (9th Cir. 1967), *and rev'd*, 390 U.S. 599 (1968).  Defendants have not asserted a similar counterclaim here.  Therefore, undersigned respectfully recommends that the Court decline the suggestions in the motion and refrain from conducting a review of the agency determination.[5]

### E. Without the Whole Administrative Record, the Court Cannot Conduct a Review of the Final Administrative Order.

Even if the Court were to look past the procedural deficiency that neither party sought review of the Final Agency Determination under the APA, and proceeded with a review of the agency action, for the reasons that follow, the Court should deny Plaintiff's motion for summary judgment with leave to renew upon submission of the whole administrative record.  The following analysis is provided solely that in the event that the District Judge, upon review,

---

[4] This Court is not bound by the decision in *Town of Bolton Landing*.  *See Sinkler v. Berryhill*, 317 F. Supp. 3d 687, 690 (W.D.N.Y. 2018) ("Of course, the decisions of other district courts, including decisions from the same district, while relevant and persuasive are not binding on other district courts") (internal quotes and citations omitted).

[5] Even if the parties were seeking judicial review of the Final Administrative Order by their briefs in connection with the instant motion, such request would be untimely.  Challenges to agency action brought under the APA are subject to a six-year statute of limitation.  *Sai Kwan Wong v. Doar*, 571 F.3d 247, 263 (2d Cir. 2009); *Fogel v. Dep't of Def.*, 169 F. Supp. 2d 140, 149 (E.D.N.Y. 2001), *aff'd*, 36 F. App'x 473 (2d Cir. 2002).  Under the APA, the statute of limitations begins to run at the time the challenged agency action becomes final.  *Sai Kwan Wong*, 571 F.3d at 263.  Here, the Final Administrative Order became final on July 10, 2015.  Plaintiff did not file its motion for summary judgment until January 24, 2022 (approximately 6 years and 6 months after final agency action), and Defendants filed their opposition brief on March 30, 2022 (approximately 6 years and 8 months after final agency action).  (*See* DE 44-45; DE 47.)

15

disagrees as to the undersigned's conclusion that the Court should not review the Final Administrative Order, the Court may nevertheless proceed to review on the merits.

Under the APA, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof." 5 U.S.C. § 702.  A reviewing court must "hold unlawful and set aside agency action, findings, and conclusions found to be ... arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" or "unsupported by substantial evidence."  5 U.S.C. § 706(2)(A).  Agency action is arbitrary and capricious when the agency "has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in or the product of agency expertise." *Baiju v. U.S. Dep't of Lab.*, No. 12-CV-5610 KAM, 2014 WL 349295, at *7 (E.D.N.Y. Jan. 31, 2014) (citing *Karpova v. Snow*, 497 F.3d 262, 268 (2d Cir. 2007)).  A reviewing court must not substitute its judgment for that of the agency and as long as the agency examines relevant data and provides a satisfactory explanation, including a rational connection between the facts found and the choice made, the agency action should be upheld. *Baiju*, 2014 WL 349295 at *7.

The court reviews the agency's legal conclusions *de novo*, and the agency's fact-findings are reviewed under a substantial evidence standard *Id.*; *see* 5 U.S.C. § 706(2)(E). Substantial evidence means more than a mere scintilla but something less than the weight of the evidence, and the substantial evidence standard may be met despite the possibility of drawing two inconsistent conclusions from the evidence.  *Id.*  "The substantial evidence standard is notoriously difficult to overcome on appellate review."  *Id.* (quotes omitted).  The summary

16

judgment standard under Rule 56 does not apply and rather, because the district court sits as an appellate tribunal in such case, the function of the reviewing court is to determine "whether or not as a matter of law the evidence in the administrative record permitted the agency to make the decision it did." *Id.*

It necessarily follows that "[c]ourts reviewing agency action under the APA must base their review on the 'whole record.'" *Saget v. Trump*, 375 F. Supp. 3d 280, 340 (E.D.N.Y. 2019) (quoting 5 U.S.C. § 706(2); *Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, No. 19-CV-10005 (VSB), 2022 WL 1094790, at *5 (S.D.N.Y. Apr. 12, 2022) ("When reviewing an agency's decision, a district court must review the whole record"); *Schicke v. Romney*, 474 F.2d 309, 315 (2d Cir. 1973) (the court "must have before it the full administrative record which was before the agency and on which the agency determination was based"). "The whole record is the full administrative record that was before the agency at the time of the decision." *Nat. Res. Def. Council, Inc.*, 2022 WL 1094790 at *5. The reviewing court should have access and confine their review "to the full administrative record, which should include all materials the agency 'compiled' that were before the agency when it made its decision." *Id.* It is ultimately the responsibility of the reviewing court to determine whether the administrative record is complete. *Id.* at 341.

The whole administrative record is not before the Court here. Plaintiff has submitted the various letters and determinations issued by the WHD and the ALJ as a result of the WHD investigation beginning in 2013 for compliance with the H-1B provisions of the INA. (*See* DE 1; DE 44-3-DE 44-11.) Defendants have submitted the medical records purportedly provided to the ALJ by Massey as evidence as to why she could not participate in the administrative proceedings. (*See* DE 47-4-DE 47-10.) However, the investigation by the WHD involved an

17

examination of records, including payroll and time records, interviews with employees, observation of working conditions at the employer's place of business and meetings with the employer. (DE 44-1 at ¶ 2; DE 44-2 at ¶ 8.) None of which is included for the Court's review here. This necessarily precludes the Court's review of the agency action.

Therefore, undersigned respectfully recommends that in the event the Court proceeds with reviewing the Final Administrative Order, the Court should deny Plaintiff's motion for summary judgment with leave to renew upon submission of the whole administrative record.

### IV. <u>CONCLUSION</u>

Plaintiff has demonstrated that no genuine issue of material fact exists. Therefore, for the foregoing reasons, the undersigned respectfully recommends that Plaintiff's motion for summary judgment to enforce the Final Administrative Order be granted.

## V.     OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:  Central Islip, New York
        August 23, 2022

Respectfully submitted,

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge